**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANIYRA S. SCOTT,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-3687** |
| | : | |
| **VALERIE ARKOOSH,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                         **APRIL 16, 2026**

Shaniyra Scott filed this *pro se* civil action against two high-ranking officials at the

Pennsylvania Department of Human Resources ("DHS")—Secretary Valerie Arkoosh and

Director of the Bureau of Policy Carl Feldman.  Scott asserts Fourteenth Amendment procedural

due process claims based on how DHS processed her application for supplemental nutrition

assistance program ("SNAP") benefits and medical assistance ("MA") benefits.  Before the

Court is Defendants' Motion to Dismiss the Amended Complaint or, in the Alternative, for

Summary Judgment.  For the following reasons, Defendants' Motion to Dismiss will be granted.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

Scott asserts official capacity claims against Arkoosh and Feldman only and seeks

injunctive relief "to remedy ongoing Fourteenth Amendment procedural due process violations

arising from" DHS's "handling" of her application for SNAP and MA benefits.  (Am. Compl. at

1.)  Scott submitted a "new" application for SNAP and MA benefits to the Delancey County

Assistance Office ("CAO") on February 11, 2025.  (*Id*. at 1, 3.)  The application contained "the

---

[1] Unless otherwise noted, the factual allegations are taken from the Amended Complaint
(ECF No. 15), which is the operative pleading in this case.  The Court adopts the sequential
pagination supplied by the CM/ECF docketing system.

minimum elements required under federal and state law to be treated as a complete application," such as the names of household members, address, telephone number, and signature. (*Id*. at 3.) When Scott submitted the application, DHS staff stamped it with the February 11, 2025 date and provided her with a receipt. (*Id*.) Although she submitted it as a "new application," DHS allegedly processed it as a "renewal application" that was "completed" on February 24, 2025. (*Id*. at 4.) Scott states that she did not submit a renewal application and did not authorize DHS or CAO to process the application as a "renewal" instead of as a "new" application. (*Id*. at 3.) Scott attaches her February 11 application as an exhibit to the Amended Complaint. (*Id*. at 11-26.) Scott provides minimal information in the application: her name, address, and phone number; the name of the other member of her household; Scott's signature; and the date. (*Id*.)

Together with her application, Scott submitted a "Notice of Written Notification to the Department for Revocation of Authorization to Disclose Financial Information and Right to Privacy," which was also dated February 11, 2025. (*See id*. at 26.) In the Notice, Scott purports to revoke all prior authorizations she had given to financial institutions to disclose her financial information to DHS "for the purpose of identifying and verifying resources (also called 'assets') when needed to determine and redetermine eligibility for Medical Assistance." (*Id*.)

On March 11, 2025, DHS denied Scott's application for SNAP and MA benefits, noting that her household's total monthly income was greater than the income limit for these benefits. (*Id*. at 4, 27-28.) On March 17, 2025, Scott filed an appeal of the denial, indicating in her appeal that DHS processed a renewal application (that she never submitted) instead of a new application (that she did submit). (*Id*.) DHS denied Scott's February 11 application without "conducting an interview, requesting verification, or issuing required notices." (*Id*. at 2.) Moreover, in denying the application, the DHS relied on income information that Scott did not include in her February

2

11 application and that was never verified with Scott.  (*Id*. at 4.)  Scott filed an appeal of the denial on March 17, 2025.  (*Id*.)  A hearing took place on her appeal on July 16, 2025.  (*Id*.)  At the hearing, a CAO caseworker stated that income information about Scott and the household member listed on her application was obtained from two "third party databases"—Equifax and the Social Security Administration.  (*Id*.)  Scott stated during the hearing that her "issue was not [about] income, but rather how the application was improperly handled" because it was "replaced with a renewal she did not file."  (*Id*.)  As of December 2025, DHS had not yet issued an opinion on Scott's appeal or provided Scott with a copy of the renewal application that was processed by the CAO and ultimately denied.  (*Id*.)  Due to DHS's conduct, Plaintiff has received no SNAP benefits from February 2025 through December 2025.  (*Id*. at 5.)

On October 15, 2025, DHS issued a denial with respect to the medical assistance benefits for Scott's household member.[2]  (*Id*.)  In the denial, DHS stated that income was too high, relying on third-party data instead of verifying with Scott.  (*Id*.)  Scott filed an appeal of her household member's MA benefits.  (*Id*.)

Based on these allegations, Scott asserts Fourteenth Amendment procedural due process claims.  She states that the "continuous delays, substituted renewal, lack of verification, reliance on third-party income, and refusal to process a properly submitted completed application

---

[2] To the extent that Scott attempts to assert claims based on the denial of MA to her household member, the claim must be dismissed.  An individual who is not an attorney may not represent another party in federal court.  *See Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court." (citation omitted)); *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (*per curiam*) ("The federal courts 'have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity.'" (quoting *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664-65 (9th Cir. 2008))).

constitute ongoing deprivation of [her] right to a fair, timely, and lawful eligibility determination." (*Id.*)

The Court previously granted Scott leave to proceed *in forma pauperis* and directed the service of her Complaint. (ECF No. 4.) Shortly after Defendants filed a Motion to Dismiss the Complaint (ECF No. 14), Scott filed an Amended Complaint (ECF No. 15). Defendants filed a Motion to Dismiss the Amended Complaint, or in the alternative for Summary Judgment (ECF No. 15), to which Scott filed a Response (ECF No. 18).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack, like that raised by the Commonwealth, does not dispute the facts alleged in the complaint, *id.*, and therefore essentially applies the same standard as a motion under Rule 12(b)(6), *see Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party.").

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendants' burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

## III.   DISCUSSION

Defendants argue that Scott's § 1983 claims for declaratory and injunctive relief, which

are asserted against them in their official capacities only, are barred by Eleventh Amendment immunity, and that the "narrow exception" to this immunity for prospective relief, as first noted in *Ex Parte Young*, 209 U.S. 123 (1908), does not apply because there is no ongoing violation of federal law. (*See* ECF No. 16 at 8-9.) Defendants also contend that Scott fails to state a procedural due process claim because she "received both notice and a meaningful opportunity to be heard." (*Id*. at 10.) Scott responds that she does not challenge the income determination and does not seek review of the administrative decision denying her benefits. Rather, she claims "ongoing violations of procedural due process arising from Defendants' handling of her February 11, 2025 application for benefits." (*See* ECF No. 18 at 1.) In particular, she challenges DHS's "use of undisclosed third-party data," the fact that DHS processed the application as a "renewal" instead of a new application, its failure to provide her with a copy of the alleged renewal application, and its denial of "meaningful notice and opportunity to contest the evidence relied upon." (*Id*. at 1-3.)

Scott's due process claims are asserted under the Fourteenth Amendment. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989), and the Commonwealth of Pennsylvania has not waived that immunity for claims under § 1983, *see* 42 Pa. Cons. Stat. § 8521(b). However, the Eleventh Amendment does not bar official capacity claims against state officials where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *Pa. Fed'n of*

6

*Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  Courts reason that injunctions against state officials actively violating federal laws are "necessary to vindicate the federal interest in assuring the supremacy of that law," despite the Constitution's prohibition against suits against the state.  *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages."  *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)).  But the "legal fiction recognized in *Ex parte Young* is narrow in scope."  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193 (3d Cir. 2021) (citation omitted).  "It requires [the Court] to conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and whether it seeks relief properly characterized as prospective."  *Id.* at 193-94 (internal quotation marks omitted); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).  Thus, under the *Ex Parte Young* doctrine, a plaintiff may bring claims against state officials in their official capacity when they commit an "ongoing violation of federal law."  *Waterfront Comm'n of New York Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotations omitted)).

Scott claims that she seeks prospective relief "requiring Defendants to properly process the February 11, 2025 application in accordance with constitutional requirements."  (ECF No. 18

at 3.)  This requested relief is not prospective.  A plaintiff alleging a claim under the *Ex parte Young* exception "must show that they have sustained or are in immediate danger of sustaining some direct injury as the result of the challenged official conduct" that is real and immediate, as opposed to hypothetical or conjectural.  *J. C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (*per curiam*) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  Scott faces no immediate danger of immediate and direct injury if her February 11, 2025 application is not reprocessed as "new" as opposed to "renewed."  She was denied benefits because her household income was over the limit and is currently not receiving them so there is no risk of her losing benefits.  Moreover, requesting DHS to reconsider or reprocess her February 11, 2025 application is retroactive in nature and not prospective and, thus, not the type of relief contemplated by the *Ex parte Young* exception.  *See Williams by & through Bookbinder v. Connolly*, 734 F. App'x 813, 816 (3d Cir. 2018) (concluding that *Ex parte Young* exception to Eleventh Amendment immunity did not apply where the plaintiff sought injunctive relief requiring Defendants to reevaluate her Medicaid application and find her eligible for benefits).

Scott's claim for declaratory relief is also not proper and cannot serve as a basis to invoke the *Ex parte Young* exception.  Scott seeks a declaration that "Defendants' handling of [her] February 11, 2025 application violated [her] rights to due process under the Fourteenth Amendment."  (Am. Compl. at 8.)  However, declarations are not appropriate when they merely seek to adjudicate past conduct, as Scott's does here.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) (noting that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another"); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties,

8

not to adjudicate past conduct where there is no threat of continuing harm."). Accordingly, the *Ex parte Young* exception to immunity does not apply to Scott's claims.

Even if Scott's Amended Complaint could somehow be construed as seeking prospective injunctive relief to stop an ongoing violation of federal law, Scott has not plausibly alleged a procedural due process claim. The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [her] did not provide due process of law." *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (*per curiam*) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard.").

Scott received adequate notice. On March 11, 2025, DHS issued a denial to Scott of her February 11 application for SNAP and MA benefits. There is no dispute that Scott received this denial notice. The notice contained information about filing an appeal. Thereafter, on March 17, 2025, Scott filed an appeal of the benefits denial. Scott also received an adequate opportunity to be heard on the denial. A hearing took place on her appeal on July 16, 2025, during which Scott had an opportunity to raise arguments and challenge how her application was processed. Scott has not articulated why the notice she received or the hearing she attended were deficient.

Instead, she challenges procedures DHS followed in processing her application.  For example, she alleges that DHS denied her application without first requesting verification.  However, as revealed in the April 2, 2025 Response Letter from Feldman to Scott, which Scott attaches as Exhibit D to her Amended Complaint, an "Income Maintenance Caseworker" tried to contact Scott on March 7, 2025 "to complete an interview" for her February 11 application and left a voicemail.  (Am. Compl. at 41.)  Scott also takes issue with the fact that DHS processed the application as a renewal and not a new application.  However, because Scott had been receiving MA benefits and her coverage was due for renewal in February 2025 (*see* Am. Compl. at 40), it makes sense that her February 11, 2025 application was processed as a renewal application and not a new application.  In any event, Scott offers no explanation as to the significance of processing her application as renewed vs. new or how the distinction violated her rights or caused her any prejudice.

Finally, Scott's argument that DHS violated her due process rights for accessing third party sources of income for her and her household member—when she included no income information in the application—is disingenuous.  DHS is required to maintain an income and eligibility verification system ("IVES") and is permitted by law to use IVES to access income information, such as social security disability statements, to verify income for benefits applicants.  (Am. Compl. at 41); *see also* 7 C.F.R. §272.8(a)(1).  Further, by signing the application for SNAP and MA benefits, Scott authorized DHS to access this income information for purposes of determining her eligibility.  (*See* Am. Compl. at 41.)  The authorization was contained in the "Understanding Your Rights and Responsibilities" section of her February 11 application.  (*Id.* at 25, 41.)  Thus, even if Scott were able to overcome Eleventh Amendment immunity, she nevertheless fails to state a procedural due process claim.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and dismiss the Amended Complaint.  Because amendment of the claims would be futile, the dismissal is with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (requiring amendment in a pro se case unless it would be inequitable or futile).  An appropriate Order follows.

**BY THE COURT:**

*/s/ John Milton Younge*
**JOHN MILTON YOUNGE, J.**
